# PUBLISHING AGREEMENT

This Publishing Agreement is entered into this __23__ day of _____January_____, 20__19__, by and between

Author: Marci Clark
726 N 2nd Ave East
Newton IA 50208

Agent: RedRock Literary c/o
David Grishman
55 Sampson Ave.
Swampscott MA 01907

("Author") and PINK SAND, LLC, a Massachusetts limited liability company with a mailing address at 125 Summer St Boston MA 02110 ("Publisher") with reference to new full-length works tentatively identified as follows:

a) The *Hearts* Series (6); and
b) *A Life Without Water*
c) 8 (eight) new titles to be written by Author and delivered to Publisher in 2019 and 2020 on a schedule to be determined by mutual agreement, but not fewer than all 8 titles delivered to Publisher by December 31, 2020. The new 8 titles may include: *The Hearts Series* Spinoff books (3), a TBD five (5) book series, or other spin-off or series as proposed by the Author and accepted by the Publisher.
d) In addition, the entire catalogs of Marci Boudreaux and Emilia Mancini will be acquired. See Appendix A for a comprehensive list which will be referred to as (the "Works")

In consideration of the promises set forth in this Agreement, the Author and the Publisher agree that:

1.      GRANT OF RIGHTS. The Author grants to the Publisher the exclusive right to publish, reproduce and distribute the Works in all languages and to exercise and grant to third parties the rights to the Work described in Paragraph 6 throughout the world ("Territory") for ten (10) years to the Work in the Territory from the date of execution of the Agreement.

2.      MANUSCRIPT DELIVERY AND PAYMENT

(a)      The Author shall deliver to the Publisher within 48 hours of execution of Agreement one copy of the complete manuscript for the Works (see Appendix A for comprehensive list of titles) and acceptable to the Publisher in content and form and the data storage device on which the Work is stored. If the complete manuscript and/or data storage device delivered by the Author is not acceptable to the Publisher, the Publisher shall give the Author a written request for changes and revisions. The Author shall have 30 days from the Author's receipt of such a request to deliver to the Publisher a revised manuscript and/or data storage device for the Work that is acceptable in both content and form to the Publisher.

(b)     Payment for the Works shall be made as follows:

i.      $1,500 payable on acceptance into editing of the manuscript for *Hidden Hearts*, *The Hearts Series #1*.

ii.     $1,500 payable on acceptance into editing of the manuscript for *Burning Hearts*, *The Hearts Series #2*

iii.    $1,500 payable on acceptance into editing of the manuscript for *Stolen Hearts*, *The Hearts Series #3*

iv.     $1,500 payable on acceptance into editing of each subsequent manuscript of *The Hearts Series #4-6*

v.      $1,500 payable on acceptance into editing of each of the manuscripts of the TBD 8 (eight) new works

vi.     $1,500 payable on acceptance into editing of the manuscript to *A Life Without Water*.

vii.    $300 payable on acceptance into editing of Backlist titles that will be expanded into full length works. Publisher will specify, which, if any, works should be expanded and work with Author to schedule such.

viii.   Other than the backlist titles that will be expanded,  there will be no associated advance for the backlist titles specified in Appendix A. Pink Sand will spend no less than $25,000 marketing the Marci Bolden author brand within the initial 90 days upon the publishing of the first Works.

vi.     For no additional consideration, Pink Sand shall have an option to license new literary works written by the author that are part of, or a continuation of the series, acquired under this contract. The acquisition price for any such additional literary work shall be $2,000 for each full length novel, with the acquisition price to be payable upon the delivery by the Author of the manuscript therefor and acceptance by Pink Sand.

(c) The Author shall at the Author's expense obtain and deliver to the Publisher with the complete manuscript: (i) written permissions required by the Publisher for any quotations from other sources included in the Work by the Author; and (ii) photographs required by the Publisher for the Work together with written permission for their use as part of the Work.

If the Author fails to do so, the Publisher may obtain such items and charge the costs incurred to the Author's royalty account.

(c)     If the Publisher wishes to publish an index as part of the Work, the Publisher will inform the Author and have one prepared.

(d)     The Author shall not offer rights to another book outside of this Agreement to another publisher nor accept an offer for another book from another publisher until a complete manuscript for the Work has been delivered to the Publisher and the Author has complied with the option provisions of Paragraph 14. This provision shall apply to books co-authored by the Author as well as to books written solely by the Author.

3.      EDITING AND PROOFS.  After the Work has been developmentally edited, copyedited/line edited, and accepted by the Publisher, no material change may be made without

the Author's approval. However, the Publisher may proofread the Work in accordance with its standards of punctuation, spelling, capitalization and usage. The Publisher shall send the proofread manuscript to the Author, who shall make any revisions and corrections and return it within two weeks of receipt, if not sooner.  The Author shall review and return within two weeks of receipt, if not sooner, proofs or other production materials submitted by the Publisher.

4.        PUBLICATION.

(a)        The Publisher shall publish an e-book and trade paperback edition of the Work in such style and manner as the Publisher deems appropriate within 12 months from the date of the Publisher's acceptance of the manuscript and data storage device for the Work, provided the Author has complied with Paragraphs 2(b) and 3 and has responded in a satisfactory way to any requests made under Paragraph 10(c). All details of publication, including manufacture, format and design, distribution, pricing, advertising and promotion and distribution of free copies, shall be determined by the Publisher.  The Publisher shall give the Author 10 copies and the Author's agent 5 copies of each of the Publisher's editions of the Work on publication of each. The Author may purchase additional copies at a discount of 50% for personal use, but not for resale. Any requests for trade paperback versions of the Work which the Author intends to give away at promotional events such as a reader conferences or book signings may be provided at the Publisher's discretion upon receipt and approval of a written request by the Author. Such requests should not exceed 200 trade paperback editions of any single Work for any single event. The Publisher is under no obligation to provide trade paperback editions to the Author at any time and at no time may the Author sell or resell any version of any Work. If the Publisher provides trade paperback editions for a promotional event which are not given away by the Author, the Author may retain those editions for use in other not-for-sale or resale promotional events.

(b)        Publisher shall consult with Author on the jacket design and copy as well as the interior design for the Publisher's print and ebook edition of the Work. The Publisher will retain final discretion on all branding, copy, and ad/jacket designs.

(c)        If the Publisher requests, the Author shall participate in an author promotion tour, not to exceed two weeks, during the one-month period immediately following the Publisher's first publication of the print edition of the Work.  All reasonable expenses incurred by the Author in connection with such promotional tour shall be paid by the Publisher.  If the Author is not available to participate in such a promotional tour at the time the Publisher desires to publish the Work, the Publisher may postpone publication until such time as the Author is available. It is acknowledged that the Author's promise to personally perform the foregoing promotional and publicity activities has been a material inducement to the Publisher to enter into this Agreement and constitutes an essential part of the consideration provided to the Publisher hereunder.

5        ROYALTIES.

(a)  The Publisher shall pay to the Author royalties on sales of copies of the Publisher's editions of the Work as follows:

(1)  on all hardcover copies sold through ordinary channels of trade in the United States (except as otherwise provided below), the following percentages of the suggested customer's price:

(A)  1 to 500 copies:         No royalty
(B)  501 to 1,500 copies:     $0.40 per unit sold per Nielsen Bookscan
(C)  1,501 to 5,000 copies:   $0.50 per unit sold per Nielsen Bookscan
(D)  5,001 to 10,000 copies:  $0.60 per unit sold per Nielsen Bookscan
(E)  excess of 10,000 copies: $0.70 per unit sold per Nielsen Bookscan

(2)  N/A
(3)  N/A
(4)  N/A
(5)  N/A
(6)  N/A

(7)  on all rack-size (mass market) paperback copies sold through ordinary channels of trade in the United States (except as otherwise provided below), the following percentages of the wholesale price received by Pink Sand:

(A)  1 to 150,000 copies: 5%
(B)  in excess of 150,000 copies: 8%

(8)  on all rack-size (mass market) paperback copies sold in the United States at discounts higher than the Publisher's announced discounts for wholesale and retail accounts in the book trade and (i) on a non-returnable basis; or (ii) as special sales, as premiums, to catalog accounts, to book fairs or outside of the ordinary channels of the book trade, 5% of the amounts received by the Publisher;

(9)  N/A

(10) N/A

(11) N/A

(12) on e-book editions sold on the Kindle and iBooks platforms, the Publisher shall pay the Author 15% of receipts, defined as 100% of all amounts actually collected by Publisher on account of the reproduction, distribution, or display of E-Books. For the purposes of this Agreement an "E-Book" shall mean a digital version of the entire text of the Work that bears the imprint of the Publisher, and that, in exchange for a payment from end users, is made accessible to end users on a controlled basis as a discrete product via (i) storage on a physical medium, such as a CD-ROM, that is distributed to the end user, or (ii) downloading by the end user from the Internet or other computer network or server for reproduction and reading on a computer or similar device; or (iii) the end user's accessing a file stored on a remote computer or server that contains substantially the entire text of the Work. An E-Book may contain devices to facilitate reading and use of the text, such as hyperlinks. Notwithstanding the provisions of Paragraph 4(a), the Publisher shall not provide the Author with any copies of an E-

Book edition unless the Author requests one in writing.  No additional sound or visual material will be added to the Work without the Author's approval, such approval not to be unreasonably withheld or delayed.

(13) Bonus Payments: Upon sales of 50,000 full price sales units on the Kindle and iBooks platforms, the author will earn an additional bonus of $5,000 for each title that surpasses this sales threshold. Upon sales of 100,000 full price sales on the Kindle and iBooks platforms, the author will earn an additional bonus of $5,000 for each title that surpasses this sales threshold.

(14) on copies of audio recordings of the Work or portions of the Work or adaptations of the Work produced and distributed by the Publisher or its related divisions, royalties in accordance with 6 a (11) to this Agreement.

(15) on all copies of the Publisher's editions of the Work sold as remainders at more than cost of manufacture, 10% of amounts received by the Publisher; (The Publisher shall use its best efforts to give the Author notice of the Publisher's intention to remainder copies of the Work; the Publisher shall offer the Author 10 free copies of the Work, and give the Author a reasonable opportunity to purchase additional copies at the Publisher's manufacturing cost; however, the Publisher's failure to do so shall not be considered a breach of this Agreement nor give the Author any claim for damages.)

(16) on copies given to or sold to the Author, given away, sold below the cost of manufacture or damaged or destroyed, no royalties shall be paid.

(17) For purposes of the foregoing provisions, "suggested customer's price" shall mean the price shown on the Publisher's invoices from which discounts are deducted to calculate the amounts payable to the Publisher by its accounts.

(b) Only copies sold under 5(a)(1) and 5(a)(7) shall be counted in determining the royalty escalations described in 5(a)(1) and 5(a)(7) respectively

6.    SUBSIDIARY RIGHTS.

(a) The subsidiary rights to the Work granted to the Publisher, and the allocation of proceeds received by the Publisher from the grants of such rights to third parties, are:

|  |  | Author's Percentage | Publisher's Percentage |
|---|---|---|---|
| (1) | periodical or newspaper publication prior to book publication; | 15 | 85 |
| (2) | periodical or newspaper publication following book publication, including syndication rights; | 15 | 85 |

| | | | |
|---|---|---|---|
| (3) | permissions, including publication of portions of the Work in anthologies; | 15 | 85 |
| (4) | condensations and abridgements; | 15 | 85 |
| (5) | book club publication; | 15 | 85 |
| (6) | publication of editions for premium or special use or for direct sale to consumers; | 15 | 85 |
| (7) | foreign-language publication (including the right to sub-license the other rights granted in this Agreement to foreign-language publishers); | 15 | 85 |
| (8) | English-language publication outside the United States and Canada (including the right to sub-license the other rights granted in this Agreement to English-language publishers); | 15 | 85 |
| (9) | N/A | | |

(10) N/A

| | | | |
|---|---|---|---|
| (11) | audio recordings of all or parts of the Work or of adaptations of the Work; | 15 | 85 |
| (12) | the right to record and transmit and display the Work, or parts of the Work, by any means, electronic or otherwise, in the form in which the Work is published by the Publisher with or without annotations or additional materials, including the right to include the Work or quotations from the Work in information storage and retrieval systems and databases and in multimedia products; | 15 | 85 |
| (13) | the right to produce and distribute multimedia products adapted from the Works; | 15 | 85 |
| (14) | non-exclusive public reading rights, including the right to authorize the reading of parts of the Work on radio or television (it being understood that the Publisher may grant such rights for publicity purposes without charge and without payment to the Author); | 15 | 85 |
| (15) | Braille, large-type and other editions for the handicapped (the Publisher may grant such rights to recognized non-profit organizations for the handicapped without charge and without payment to the Author); | 15 | 85 |

(b)   If the Publisher itself desires to exercise any of the rights described above (as opposed to licensing such rights to third parties), other than those rights for which royalty rates are already provided in Paragraph 5 hereof, the Author shall be entitled to 15% of the net royalties received and the Publisher 85% of the net royalties received.

(c)   Upon the Author's written request, the Publisher shall provide the Author with copies of any subsidiary rights license agreements with respect to the Work.

(d)   Pink Sand will retain the TV/Film rights for the Works throughout the ten (10) year term of the Agreement, however should Pink Sand be unable to secure a TV/Film option or sale within 48 months of the publish date for the Works in question, the Author could leverage

personal contacts and connections in the industry. In return, Pink Sand would increase the author Royalty under such a scenario to a 30%, only if the Works are optioned/purchased by someone not contacted by Pink Sand. Given this concession, the Author would be responsible for her own costs associated with negotiating any potential deal should she choose to proceed with this scenario. Should the author bring a deal prior to 48 months of the publish date, author would be entitled to a 25% net royalty.

7.      ACCOUNTING. (a) Following first publication of the Work by the Publisher, an accounting of all of the Author's earnings under the terms of this Agreement, accompanied by payment of amounts due on such accounting, shall be rendered no later than 75 days after the end of the corresponding reporting periods. An accounting shall be provided on or before June 15th, September 15th, December 15th, and March 15th of each year for the periods ending the preceding March 31, and June 30, September 30, and December 31 respectively.

(b)      The Publisher may retain a reasonable reserve against returns on any accounting statement, provided the amount of the reserve held is clearly indicated.  Any amount held as a reserve against returns shall be held only until the next accounting is rendered and the statement issued for the subsequent period shall clearly indicate how the amount previously withheld has been applied to the Proprietor's account.  It is not the intent of this provision that a reserve against returns be held in every accounting period; rather, any reserve held shall be calculated with respect to the accounting being rendered and shall be reasonably related to the Publisher's reasonable expectation as to returns at the time such statement is prepared.  On request, the Publisher shall provide a written explanation of any reserve.

(c)      If the Author receives an overpayment of royalties because of copies reported sold but subsequently returned, the Publisher may deduct the amount of the overpayment from further sums due the Author under this Agreement. If any such overpayment is not recouped in two accounting periods, the Author, upon request, shall pay the Publisher the unrecouped balance.

8.      RIGHT TO AUDIT. (a) Upon written request from the Author, the Publisher shall provide the following information: the number of copies of each edition of the Work printed by the Publisher; the date of each printing; the cumulative number of copies sold, returned, distributed free of charge, remaindered, destroyed or lost; copies of any licenses made by the Publisher; and any other information the Author may reasonably request on the basis that it is required in order to ascertain the accuracy of accountings rendered.

(b)      The Author may upon written notice examine the Publisher's records relating to the Work during normal business hours under such conditions as the Publisher may reasonably prescribe. If an error is discovered as a result of any such examination, the party in whose favor the error was made shall promptly pay the other the amount of the error. Any such examination shall be at the Author's expense unless errors of accounting in the Publisher's favor amounting to 5% or more of the total sum paid to the Author under this Agreement are found, in which event the Publisher shall contribute to the cost of the examination up to the amount of the error determined as a result of the examination.

9.     WARRANTIES.  The Author warrants to the Publisher that: (i) the Author is the sole author of the Work and sole owner of the rights granted in this Agreement, has not assigned, pledged or otherwise encumbered them and has the right to enter this Agreement; (ii) the Work is an original work, has never before been published in whole or in part in any form in the Territory, is not in the public domain in any country in the Territory and does not infringe any copyright or any other proprietary or personal right; and (iii) the Work contains no material that is libelous, in violation of any right of privacy or publicity, or harmful so as to subject the Publisher to liability to any third party or otherwise contrary to law.

10.     INDEMNITIES.  (a)  The Author shall indemnify the Publisher from any loss, damage, expense (including reasonable attorneys' fees), recovery or judgment arising from any breach or alleged breach of any of the Author's warranties, subject to the limitations stated below.

(i)     Each party shall promptly inform the other of any claim made against either which, if sustained, would constitute a breach of any warranty made by the Author to the Publisher in this Agreement. The Publisher shall defend any such claim made against the Publisher with counsel of the Publisher's selection. The Author shall fully cooperate with the Publisher in such defense and may join in such defense with counsel of the Author's selection at the Author's expense.

(ii)    If the Publisher wishes to settle on its own behalf any claim made against the Publisher, the Publisher shall consult with the Author and give serious consideration to any objections the Author may have, and the Author and the Publisher shall attempt in good faith to agree in writing on the percentage of any such settlement costs which each shall bear. Failing such agreement, the Publisher may on its own behalf settle any such claim made against the Publisher on terms the Publisher deems advisable. In such event, the Publisher may recover from the Author amounts paid in settlement if settlement costs are incurred because of a breach of a warranty made by the Author to the Publisher in this Agreement. Alternatively, the Author may, at the Author's discretion, provide security reasonably acceptable to the Publisher for the further costs of defending the claim, in which event the Publisher shall not settle without the Author's written consent.

(iii)   If any such claim is successfully defended, the Author's indemnity shall be limited to 50% of the costs (including reasonable attorneys' fees) incurred by the Publisher in the defense of the claim.

(iv)    If any such claim is made, the Publisher may withhold a portion of payments due the Author under this Agreement to cover the Author's obligations stated above. (Amounts withheld shall be reasonably related to the Publisher's reasonable assessment of the damages claimed and of the anticipated defense costs.) The Publisher shall deposit monies so withheld in an interest-bearing account pending disposition of the claim; monies withheld and the interest thereon will be first applied to satisfy the Author's obligation to indemnify the Publisher, and the balance remaining shall be promptly remitted to the Author after the disposition of the claim or after the claim has in the Publisher's opinion been abandoned.  If monies are withheld under this provision

because a claim is made, but such claim does not result in a litigation within one year from the date on which the claim is first asserted, the Publisher shall release monies being withheld unless at such time the Publisher is either actively conducting settlement discussions relating to the claim or actively defending the claim by correspondence.

(b)     The Author shall be responsible for any claims made against any third party to which the Publisher grants subsidiary rights to the Work to the same extent as the Author is responsible to the Publisher under the indemnification provisions of this Agreement. The warranties and indemnities made by the Author in this Agreement shall survive the termination of this Agreement.

(c)     Prior to the first publication of the Work, the Publisher may have the Work read by the Publisher's counsel at the Publisher's expense. If the Author makes changes in the Work as are recommended by the Publisher's counsel, the Author's indemnity for a judgment shall be limited to 50% to the extent that such judgment arises from a matter within the scope of the review by the Publisher's counsel and as to which the Author made full disclosure to the Publisher. If the Author will not make changes recommended by the Publisher's counsel, the Publisher shall not be required to publish the Work and shall have the right to recover from the Author any advances made to the Author under this Agreement. When such advances are fully repaid, this Agreement shall terminate.

11.     N/A

12.     NON-COMPETITION. During the term of this Agreement, the Author shall not without the Publisher's consent publish any book on the same or similar subject matter as that of the Work within 60 days immediately preceding or following a proposed release date hereunder which injures the Publisher's sale of the Work or the licensing of rights granted hereunder with respect to the Works. Author shall not publish a solo-authored, or co-authored, work without completing in full the terms set forth under this Agreement, or without written approval of the Publisher.

13.     COPYRIGHT. (a) The Publisher shall print a copyright notice in conformity with the United States Copyright Act and the Universal Copyright Convention in the name of Author in each copy of the Work printed by the Publisher and require its licensees to do the same. The Publisher shall register the copyright on the Work with the United States Copyright Office promptly after first publication and may record this Agreement with the United States Copyright Office.

(b)     Any textual or illustrative material prepared for the Work by the Publisher at its expense may be copyrighted separately as the Publisher deems appropriate.  All references to copyright in this Agreement shall reflect any amendment made subsequent to the date of this Agreement in the copyright laws of the United States, in any international copyright convention or in the copyright laws of any other country within the Territory. Both parties shall execute such documents as may be necessary to effectuate copyright to the Work in accordance with this Agreement.

(c)     In the event of any infringement of the copyright to the Work, the Publisher may employ such remedies as it deems advisable and may name the Author a co-plaintiff in any litigation the Publisher may commence. The Publisher shall bear the entire expense of any such litigation. Any recovery shall be applied first to reimburse the Publisher for its expenses; the balance shall be divided between the Author and the Publisher as follows: that portion which is based on actual damages shall be divided in proportion to the losses from such infringement suffered by each, and that portion which is based upon the infringers' profits, statutory damages or punitive damages shall be divided equally.

14.     OPTION. In further consideration of this Agreement, the Author grants to the Publisher an option on the Author's next book-length work (the "option book"), such option to be exercised as follows. The Author shall submit to the Publisher a complete manuscript for the option book before offering rights to the option book to any other party. The Publisher shall have 30 days from its receipt of the option book to advise the Author whether it wishes to publish the option book and upon what financial terms. The 30 day period will commence no earlier than 60 days following the Publisher's first publication of the Work. If within such 30-day period the Publisher does not advise the Author that it wishes to publish the option book, the Author may offer the option book to other parties without further obligation to the Publisher. If within such 30-day period the Publisher does advise the Author that it wishes to publish the option book but within 30 days of the Publisher so advising the Author, the Author and the Publisher have not agreed on financial terms for such publication, the Author may offer the option book to other publishers. This option provision shall apply to the next book co-authored by the Author as well as the next book solely authored by the Author.

15.     AUTHOR'S RIGHTS OF TERMINATION. (a)     If the Publisher does not publish the Work within the time specified in Paragraph 4(a) for reasons other than first serial or book club use, delays of the Author in returning the copyedited manuscript or proofs, the Author's failure to comply with requests made by the Publisher's counsel or delays caused by circumstances beyond the Publisher's control and if the Publisher at any time thereafter receives written notice from the Author demanding publication, the Publisher shall within ninety (90) days of the Publisher's receipt of such written demand either publish the Work or revert to the Author in writing all rights to the Work granted to the Publisher in this Agreement, subject to any outstanding licenses, which shall be assigned to the Author, and the Author shall retain any advance payments made under this Agreement prior to such reversion as liquidated damages for the Publisher's failure to publish the Work.

(b)    If the Work is out-of-print and the Publisher receives from the Author a written request for a reversion of rights, the Publisher shall within six months of the Publisher's receipt of such request do one of the following: (i) announce that it will reissue an edition of the Work under one of its imprints within one year from the date of the request; or (ii) enter a license providing for the publication in the United States of an edition of the Work within one year from the date of the license; or (iii) revert in writing to the Author the rights granted to the Publisher in this Agreement. (If the Publisher does announce that it will reissue an edition of the Work but has not reissued an edition one year after the Publisher's receipt of a request for reversion, the rights shall on such date automatically revert to the Author.)  Any reversion shall be subject to grants of rights made to third parties prior to the date of the reversion and the right of the Author and the Publisher to participate in the proceeds from such grants.  The Work shall be considered

out-of-print if no edition is available for sale through ordinary channels of the book trade in the United States from the order fulfillment department of the Publisher or a licensee of the Publisher and no license is in effect which provides for the distribution of an edition of the Work through ordinary channels of the book trade in the United States within twelve (12) months from the date of the Author's request for a reversion.  If for two (2) consecutive accounting periods neither the Publisher nor a licensee of the Publisher has printed and electronic copies of the Work available for sale in the United States, but the Work is available for sale from the Publisher or a licensee of the Publisher by some means of on-demand printing, or electronic transmission or reproduction and within those two accounting periods, the Publisher and its licensees, collectively, have sold less than twenty-five (25) copies of the Work, the Work shall be deemed out of print.

16.    PUBLISHER'S RIGHTS OF TERMINATION.  (a)  If the Author does not deliver the complete manuscript and/or computer disk(s) for the Work within three months of the delivery date in Paragraph 2(a) or, if requested to do so, does not deliver a revised, complete manuscript and/or computer disk(s) for the Work within the time specified in Paragraph 2(a), the Publisher shall not be required to publish the Work and shall have the right exercisable at the Publisher's discretion at any time thereafter to recover from the Author any advances made to the Author under this Agreement. When such advances are fully repaid, this Agreement shall terminate.

(b)    If the complete manuscript and/or computer disk(s) as first submitted by the Author is unacceptable and the Author, after receiving the Publisher's request for changes and revisions, in good faith makes a timely delivery of a revised, complete manuscript and/or computer disk(s) for the Work that satisfies all the provisions of this Agreement except the requirement of being acceptable to the Publisher in content and form, the Publisher shall not be required to publish the Work and the Publisher shall give the Author notice of its decision not to publish. Thereafter, the Author may offer rights to the Work to other publishers and, if the Author submits to the Publisher a copy of an agreement for the Work with another publisher that provides for payment to the Publisher of all monies payable thereunder until advances made to the Author under this Agreement have been repaid, the Publisher shall relinquish its rights conditioned upon the Author entering such agreement with such other publisher. (If the Author desires to grant to another publisher less than all of the rights granted to the Publisher in this Agreement, the foregoing shall apply to separate grants the Author may desire to make.) If within five years from the date of the Publisher's notice that it will not publish the Work the Author has not made arrangements for the publication of the Work by another publisher, the rights to the Work shall automatically revert to the Author and the Author shall have no further obligation to the Publisher with respect to the Work.

17.    FORCE MAJEURE.  The failure of the Publisher to publish or reissue the Work shall not be a breach of this Agreement or give rise to any right of termination or reversion if such failure is caused by restrictions of governmental agencies, labor disputes, inability to obtain materials necessary for manufacture of the Work or any other reason beyond the Publisher's control; in the event of delay from any such cause, the publication or reissue shall be postponed for a period of time reasonably related to such cause.

18.    GENERAL PROVISIONS.

a.    The Author shall keep at least one copy of the manuscript for the Work and any other materials submitted to the Publisher under this Agreement. The Publisher shall upon the Author's written request, made within a year after first publication by the Publisher, return to the Author the copy of the manuscript used for typesetting; the Publisher shall not be required to retain such manuscript for more than one year. However, if editing of the Work is done solely on disk, the Publisher shall not be required to return the edited manuscript to the Author. The Publisher shall not be responsible for the loss of or damage to any manuscript or other materials submitted by the Author except in the event of its gross negligence.

b.    No advertisements (other than advertisements for other publications of the Publisher) shall be included in any edition of the Work published by the Publisher or under license from the Publisher without the Author's written consent.

c.    The Publisher may use the Author's name, likeness and biographical data on any editions of the Work published by the Publisher and in any advertising, publicity or promotion for the Work and may extend these rights in connection with grants of the subsidiary rights made by the Publisher.

d.    If the Publisher is required by law to withhold and pay to any U.S. or foreign government taxing authority any portion of amounts due the Author under this Agreement, such payments shall be deducted from the amounts due the Author hereunder.  If any foreign taxes, bank charges or agents' commissions are imposed on any payments due the Publisher from the exercise of any right granted in this Agreement, the appropriate allocation of proceeds between the Publisher and the Author from the exercise of such right shall be made on amounts received after such charges have been paid.

e.    In the event of the bankruptcy, insolvency or liquidation of the Publisher, this Agreement shall terminate and all rights granted to the Publisher shall revert to the Author automatically and without the necessity of any demand or notification.

f.    This Agreement shall be binding upon and inure to the benefit of the heirs, executors or administrators and assigns of the Author and the successors and assigns of the Publisher and may not be assigned by either without the written consent of the other, with the following exceptions. The Author may assign the Author's right to receive payment under this Agreement upon written notice to the Publisher. The Publisher may upon written notice to the Author assign this Agreement to any company that acquires or succeeds to all or a substantial portion of the assets of the Publisher.

g.    If under any provision of this Agreement, the Publisher is required to obtain the Author's approval, such approval shall not be unreasonably withheld or delayed. If the Publisher fails to receive a response from the Author within such time as the Publisher may reasonably designate to accommodate its schedule for publication, defined as five business days, promotion or the exercise of rights when any approval is requested, the approval requested shall be deemed granted.

h.      This Agreement contains the entire understanding of the Author and the Publisher with reference to the Work; there are no warranties other than those expressly stated in this Agreement. No waiver or modification of any provision of this Agreement shall be valid unless in writing and signed by both parties. No waiver of any breach shall be deemed a waiver of any subsequent breach. If any provision of this Agreement is held to be invalid or unenforceable, the remaining provisions shall not be affected.

i.      This Agreement shall in all respects be construed according to, and the rights and liabilities of the parties hereto shall in all respects be governed by the laws of the Commonwealth of Massachusetts. The caption headings of this Agreement are inserted for convenience only and are without substantive effect. This Agreement shall be of no force and effect unless signed by both parties within sixty (60) days of the date first stated above.

j.      If the Author and Publisher determines that a revision of the Work is desirable, the Author and Publisher will negotiate the scope and timing of completion of such revisions, however the final editorial acceptance of such revisions lies with the Publisher. Furthermore the Publisher will retain the right to require revisions that conflict with the Publisher's editorial policy and/or house style guide.

19.     AGENCY.  Author hereby authorizes and appoints RedRock Literary C/O David Grishman, 55 Sampson Ave, Swampscott, MA 01907 USA ("Agent") as the sole and exclusive agent with respect to all rights in and to the Work. Such agency is coupled with an interest. The Author authorizes and directs Publisher to make all payments due or to become due the Author hereunder and with respect to the sale, lease, license or other disposition of any rights therein and thereto, to and in the name of the Agent, and to accept the receipt of the Agent as full evidence and satisfaction of such payments. As the sole and exclusive agent of Author with respect to the Work, Agent is authorized to negotiate for the Author throughout the world as to the disposal of all other rights in and to the Work. Agent is further empowered to engage sub-agents. In consideration for services rendered, Agent is entitled to receive as its commission a sum equal to fifteen percent (15%) of all monies payable to the Author hereunder and/or by reason of such sale, lease, license or other disposition and from all other rights in and to the Work except foreign plus out-of-pocket expenses prior to deductions from or charges against such monies for any reason whatsoever. Such commission may also be increased to twenty percent (20%) when the agent engages a sub-agent to negotiate as to the disposal of ancillary and subsidiary rights to the Work. Agent's rights hereunder may not be revoked by the Author without Agent's prior written consent. The provisions of this paragraph will survive the expiration of this Agreement.

IN WITNESS WHEREOF, the parties have signed this Agreement to be effective as of the date first stated above.

AUTHOR:

_____

PUBLISHER:                                    PINK SAND, LLC

By:_____
Its:

Agent's Tax Identification Number:_____
Author's Citizenship:_____
Author's Birth Date:_____

AUTHOR:

PUBLISHER:                              PINK SAND, LLC

                                        By: _____ for Pink Sand LLC
                                        Its:  CEO

**APPENDIX A**

15

**APPENDIX A**

**FRONTLIST TITLES TO INCLUDE:**

*The HEARTS SERIES*:
Hearts 1: Due to publisher for developmental editing on 1/1/19
Hearts 2: Due to publisher for developmental editing on 1/1/19
Hearts 3: Due to publisher for developmental editing on 1/1/19
Hearts 4: Due to publisher on or before May 9th, 2019, or TBD by mutual written agreement reached no later than May 9, 2019
Hearts 5: Due to publisher on or before July 22nd, 2019, or TBD by mutual written agreement reached no later than July 22, 2019

Hearts 6: Due to publisher on or before October 2nd, 2019, or TBD by mutual written agreement reached no later than October 2, 2019


HEARTS SPINOFFS or TBD 8 books of new work series/spin off: proposal due 3/29/19
Book 1: Due TBD
Book 2: Due TBD
Book 3: Due TBD
Book 4: Due TBD
Book 5: Due TBD
Book 6: Due TBD
Book 7: Due TBD
Book 8: Due TBD


*A Life Without Water*

**BACKLIST TITLES TO INCLUDE:**

**STAND ALONE: (5)**
Forever Yours due upon signature
The Legend of Sarah Latham (expanded) due upon signature
The Messenger due upon signature
Unforgettable You due upon signature
California Can Wait due upon signature

**STONEHILL SERIES: (5)**
The Road Leads Back due to publisher for editing on 1/1/19
Friends Without Benefits due to publisher for editing on 1/1/19
The Forgotten Path due to publisher for editing on 1/1/19
Jessica's Wish due to publisher for editing on 1/8/19
This Old café due to publisher for editing on 1/1/19

**As Emilia Mancini: (3)**
The Rebound due upon signature
Seducing Kate due upon signature
Eye of the Wolf due upon signature

**Website freebies:**
Dreams Collide (incomplete but has series potential) due upon signature
The Lemon Drop due upon signature
The Cinnamon Drop due upon signature

**Amendment to the Agreement**
**Between Pink Sand Press and Marci Clark**

This amendment, dated as of April 21_____, 2020 (the "Amendment"), amends the Agreement, dated January 23rd, 2019, by and between Pink Sand Press LLC and Marci Clark (the "Agreement") with respect to the matters set forth in it. All defined terms in the Agreement shall have the same meaning as used herein. Except as expressly amended herein, the Agreement shall remain in full force and effect.

For good and valuable consideration, receipt of which is hereby acknowledged, Pink Sand and Author hereby agree as follows:

1. Paragraph C of the Agreement shall be amended to state that all titles remaining to be delivered by the Author to Pink Sand Press shall be as set forth on Exhibit A, referenced in the Agreement.
2. Paragraph C of the Agreement shall be amended to state: 8 (eight) new titles to be written by Author and delivered to Publisher by December 31, 2021 on a schedule to be determined by mutual agreement. No later than 30 days prior to the submission of A Life With…(Book#3), Author will propose the next 2-3 Works in the form of a duet/trilogy for acceptance by Publisher. Timing for these Works to be agreed upon by Author and Publisher and set forth in an Amendment. Once there are fewer than three titles owed Publisher, Author shall repeat the process, with the Author proposing next series/Works for acceptance by Publisher. Timing for these Works to be agreed upon by Author and Publisher and set forth in an Amendment.

IN WITNESS WHEREOF, the parties have signed this Amendment to be effective as of the date first stated above.

_Marci Clark_
Marci Clark

And

_Steven Hall_ CEO Pink Sand Press
Pink Sand Press LLC
Name: STEVEN GRISHMAN
Title: CEO          4/24/2020

EXHIBIT A

1.   A Life Without Flowers: Developmentally edited due to publisher no later than 6/1/2020

2.   A Life With....(Book#3 A Life Without Water Series): Due to publisher for developmental editing no later than 8/12/2020

3.   HEARTS 5: Due to publisher for developmental editing no later than 11/16/2020

4.   HEARTS 6: Due to publisher for developmental editing no later than 2/15/2021

5.   Remaining SIX (6) titles are TBD as outline in Paragraph 2 of the Amendment dated as of _April 21_____, 2020 between Publisher and Author.

**Amendment #2 to the Agreement**
**Between Pink Sand Press and Marci Clark**

This amendment, dated as of <u>FEBRUARY 18</u>, 2021 (the "Amendment"), amends the Agreement, dated January 23rd, 2019, by and between Pink Sand Press LLC and Marci Clark (the "Agreement") with respect to the matters set forth in it. All defined terms in the Agreement shall have the same meaning as used herein. Except as expressly amended herein, the Agreement shall remain in full force and effect.

For good and valuable consideration, receipt of which is hereby acknowledged, Pink Sand and Author hereby agree as follows:

1. Paragraph C of the Agreement shall be amended to state that all titles remaining to be delivered by the Author to Pink Sand Press shall be as set forth on Exhibit A, referenced in the Agreement.

IN WITNESS WHEREOF, the parties have signed this Amendment to be effective as of the date first stated above.

_____

Marci Clark

And

_____ for Pink Sand Press LLC
Pink Sand Press LLC
Name: STEVEN GRISHMAN FOR PINK SAND PRESS LLC
Title: CEO

EXHIBIT A



1. ——Chammont Point (Book#1): Accepted by publisher, copy edits delivered to Author.

~~1.~~2.  Chammont Point (Book#2): Due to publisher for ~~developmental~~ copy editing no later than 4/30/2021

~~2.~~3.  Chammont Point (Book#3): Due to publisher for ~~developmental~~ copy editing no later than 8/18/2021.

No later than 5/15/21, Author will present ideas for next duet/trilogy/continuation of works to Pink Sand Press. Author will propose next works and Publisher retains approval of timeline and submission of such Works.

Remaining ~~six three (63~~five (5) titles are TBD which include HEARTS#5 and HEARTS#6